JS 44 (Rev 06/17)

# CIVIL COVER SHEET

18-CV-3235

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Harbor Associates Limited Partnership, et al.

**DEFENDANTS**

StimGuard, LLC, et al.

**(b)** County of Residence of First Listed Plaintiff   Palm Beach Co., FL
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Broward Co., FL
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Matthew B. Weisberg, Esq. and David A. Berlin, Esq.
Weisberg Law, 7 South Morton Ave., Morton, PA 19070
(610) 690-0801

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government
  Plaintiff
- ☐ 3  Federal Question
  *(U.S. Government Not a Party)*
- ☐ 2  U.S. Government
  Defendant
- ☒ 4  Diversity
  *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                        *and One Box for Defendant)*

|                                        | PTF | DEF |                                                    | PTF | DEF |
|----------------------------------------|-----|-----|----------------------------------------------------|-----|-----|
| Citizen of This State                  | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State               | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation                                    | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 367 Health Care/ Pharmaceutical Personal Injury | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1332
Brief description of cause:
Breach of Contract/Quasi-Contract/Unjust Enrichment/Promissory Estoppel

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $   will supply

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions)*

JUDGE _____   DOCKET NUMBER _____

DATE   7/27/2018

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #   _____   AMOUNT   _____   APPLYING IFP   _____   JUDGE   _____   MAG. JUDGE   _____

JUL 30 2018

# Weisberg Law

*Attorneys & Counselors at Law*
LICENSED IN PA & NJ

**7 SOUTH MORTON AVENUE
MORTON, PENNSYLVANIA 19070
PH: 610.690.0801
FAX: 610.690.0880**

Additional Offices
Philadelphia, Pa
Bala Cynwyd, Pa

*Matthew B Weisberg\*^*
L. Anthony DiJiacomo~
David A. Berlin^
Robert P. Cocco~+
Gary Schafkopf^+
Brian Mildenberg~+
Marc Weisberg~+
Yanna Panagopoulos~+

\*NJ & PA Office Manager
^Licensed in PA & NJ
~Licensed in PA
+Of Counsel

Web-Site  **www.weisberglawoffices.com**
**E-Mail.**  MWEISBERG@WEISBERGLAWOFFICES.COM

*Friday, July 27, 2018*

**Via FedEx Overnight Mail**
United States District Court
Eastern District of Pennsylvania
Office of the Clerk of Court
U.S. Courthouse
601 Market Street, Room 2609
Philadelphia, PA 19106-1797

> RE:  Harbor Associates Limited Partnership v. StimGuard, LLC
>          U.S. District Court – Eastern District of Pennsylvania

Dear Sir or Madam:

Kindly find enclosed one (1) original and one (1) copy of Plaintiffs' Civil Action Complaint, along with a CD containing a pdf version of the Complaint and a check in the amount of $400.00, in regards to the above-referenced matter.

Kindly file the original and return a time-stamped copy to the undersigned via the enclosed self-addressed stamped envelope.

Thank you.

Sincerely,

MATTHEW B. WEISBERG

MBW/hcm
Enclosures

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**18**   **3235**

**DESIGNATION FORM**
(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)

Address of Plaintiff: 1001 N. U.S. Hwy 1, Jupiter, FL 33477

Address of Defendant: 1310 Park Central Blvd. S, Pompano Beach, FL 33064

Place of Accident, Incident or Transaction: 2 Bala Plaza, Suite Pl-50, Bala Cynwyd, PA 19004

---

**RELATED CASE, IF ANY:**

Case Number: _____   Judge: _____   Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes ☐  No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes ☐  No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes ☐  No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes ☐  No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 7/30/2018 _____   _____ Attorney-at-Law / Pro Se Plaintiff   85570 Attorney I.D. # (if applicable)

---

**CIVIL: (Place a √ in one category only)**

**A.** *Federal Question Cases:*

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Patent
- ☐ 6. Labor-Management Relations
- ☐ 7. Civil Rights
- ☐ 8. Habeas Corpus
- ☐ 9. Securities Act(s) Cases
- ☐ 10. Social Security Review Cases
- ☐ 11. All other Federal Question Cases
  *(Please specify)* _____

**B.** *Diversity Jurisdiction Cases:*

- ☑ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify)* _____
- ☐ 7. Products Liability
- ☐ 8. Products Liability – Asbestos
- ☐ 9. All other Diversity Cases
  *(Please specify)* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, Matthew B. Weisberg, Esq. , counsel of record or pro se plaintiff, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: 07/30/2018 _____   _____ Attorney-at-Law / Pro Se Plaintiff   85570 Attorney I.D. # (if applicable)

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)



## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

Harbor Associates Limited Partnership :

v.                          :          CIVIL ACTION

Stim Guard, LLC             :          **18   3235**

NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
and Human Services denying plaintiff Social Security Benefits.                          ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
exposure to asbestos.                                                                   ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
commonly referred to as complex and that need special or intense management by
the court. (See reverse side of this form for a detailed explanation of special
management cases.)                                                                      ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.      ( )

7/27/18 _____        _____        Plaintiffs _____
**Date**                          **Attorney-at-law**                **Attorney for**

610-690-0801 _____        610-690-0880 _____        mweisberg@weisberglawoffices.com
**Telephone**                     **FAX Number**                      **E-Mail Address**

(Civ. 660) 10/02

JUL 30 2018

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

Harbor Associates Limited Partnership :
1001 N. U.S. HWY 1 :
Jupiter, FL 33477 :
 :
 And :   CIVIL ACTION NO.:
 :
Dr. Krishna P. Singh :
d/b/a Harbor Associates Limited Partnership :
1001 N. U.S. HWY 1 :
Jupiter, FL 33477 :
 :
     Plaintiffs, :
 :
 v. :
 :
StimGuard, LLC :
1310 Park Central Blvd S :
Pompano Beach, FL 33064 :
 :
 And :
 :
Board of Directors of StimGuard, LLC :
1310 Park Central Blvd S :
Pompano Beach, FL 33064 :
 :
 And :
 :
Micron Devices, LLC :
108 West 13th Street :
Wilmington, DE 19801 :
 :
 And :
 :
Board of Directors of Micron Devices, LLC :
108 West 13th Street :
Wilmington, DE 19801 :
 :
 And :
 :
Laura Perryman :
1310 Park Central Blvd S :
Pompano Beach, FL 33064 :
 :   **JURY TRIAL DEMANDED**

And                                              :
                                                 :
Dr. Sanjay Gupta                                 :
2 Bala Plaza                                     :
Suite Pl – 50                                    :
Bala Cynwyd, PA 19004                            :
                                                 :
        And                                      :
                                                 :
StimQ Medical, LLC                               :
1310 Park Central Blvd S                         :
Pompano Beach, FL 33064                          :
                                                 :
        And                                      :
                                                 :
Board of Directors of StimQ Medical, LLC         :
1310 Park Central Blvd S                         :
Pompano Beach, FL 33064                          :
                                                 :
        And                                      :
                                                 :
John Does 1-10                                   :
                                                 :
                        Defendants.              :

## CIVIL ACTION COMPLAINT

### I.     Jurisdiction and Venue

1.      Jurisdiction in the Honorable Court is based on diversity conferred by 28 U.S.C. § 1332;

supplemental jurisdiction over state law claims is granted by 28 U.S.C. § 1367.

2.      Venue lies in this district in that the events giving rise to this claim occurred here, at least

one (1) Defendant resides, maintains a principal place of business, and/or does business within

this district.

### II.    Parties

3.      Plaintiff, Harbor Associates Limited Partnership, is a corporation by virtue of the laws of

the State of Florida.  Harbor is a citizen of Florida.

4.      Plaintiff, Dr. Krishna P. Singh, is an adult individual, doing business as Harbor Associates Limited Partnership. Plaintiff, Dr. Singh is a citizen of Florida.

5.      Defendant, StimGuard, LLC, is a corporation by virtue of the laws of Commonwealth of the Bahamas, with its headquarters located at the above captioned address.  Upon information and belief, Defendant is a citizen of Commonwealth of the Bahamas.

6.      Defendants, Board of Directors of StimGuard, LLC are adult individuals, doing business as StimGuard, LLC, located at the above captioned address.  Upon information and belief, the members of the Board of Directors are citizens of Commonwealth of the Bahamas.

7.      Defendant, Micron Devices, LLC, is a corporation by virtue of the laws of Delaware, with its registered agent located at the above captioned address.  Upon information and belief, Defendant is a citizen of Delaware.

8.      Defendants, Board of Directors of Micron Devices, LLC are adult individuals, doing business as Micron Devices, LLC, located at the above captioned address.  Upon information and belief, the members of the Board of Directors are citizens of Delaware.

9.      Defendant, Laura Perryman, is an adult individual, doing business as StimGuard, LLC and Micron Devices, LLC, which is a corporation by virtue of the laws of the Commonwealth of the Bahamas.  Defendant, Laura Perryman is a citizen of Florida.

10.     Defendant, Dr. Sanjay Gupta, is an adult individual residing at the above-captioned address.  Defendant, Dr. Sanjay Gupta is a citizen of Pennsylvania.

11.     Defendant, StimQ Medical, LLC, is a corporation by virtue of the laws of Commonwealth of the Bahamas, with its headquarters located at the above captioned address. Upon information and belief, Defendant is a citizen of Commonwealth of the Bahamas.

12.     Defendants, Board of Directors of StimQ Medical, LLC are adult individuals, doing business as StimQ Medical, LLC, located at the above captioned address. Upon information and belief, the members of the Board of Directors are citizens of Commonwealth of the Bahamas.

13.     Defendants, John Does 1-10, is a moniker/fictitious name for individuals and entities currently unknown but will be substituted when known, as affiliated, associated or liable hereunder for the reasons set forth below or inferred therefrom. Each of these parties are incorporated as Defendants in each and every count and averment listed above and below. Upon information and belief, Defendants, John Does, were agents, servants, workmen, or employees of Co-Defendants, liable to Plaintiff hereunder.

### III.    Operative Facts

14.     Around early 2015, Plaintiffs were approached by Defendants towards investing in several medical device "start-up" companies including Defendants, StimGuard, LLC, StimQ Medical, LLC, and Micron Devices, LLC.

15.     On or about May 15, 2015, Harbor Associates ("Harbor") agreed to provide financing of Five Hundred Thousand Dollars ($500,000) to the Defendant, StimGuard LLC (the "Company") in the form of a convertible note (the "Note") with a maturity date on or about May 15, 2016 (the "Maturity Date"). (Exh. A).

16.     Additionally, on or about June 12, 2015, Defendant, Dr. Sanjay Gupta, provided a personal guarantee of the Note and agreed that, in the event a sale or other such transaction failed to occur prior to the Maturity Date, he would personally reimburse Harbor in the amount of $500,000 plus an annualized return of fifteen percent (15%). (Exh. B).

17.     Dr. Gupta is not a passive investor in StimGuard; he is both an active advisor and Board Member of the company.

18.     Pursuant to the express terms in the Note, all unpaid principal, together with any then unpaid and accrued interest and other amounts payable hereunder, shall be due and payable when, after the twelve (12) month anniversary of the initial issuance of the Note, such amounts are declared due and payable by a Majority of Interest of Investors (as defined in the Note). Id.

19.     Harbor's investment was not converted to equity in the first twelve months.

20.     This was verified by Defendant Perryman on several occasions.  For example, on or about January 31, 2018, Defendant, Ms. Perryman stated in an e-mail, "For StimGuard we did not convert your notes to shares at your request."

21.     All other investors have converted. Since all other investors converted their notes to equity, Harbor holds more than fifty percent (50%) of the aggregate outstanding principal amount of the notes and therefore has the sole right to declare the Note due and payable. (Exh. A).

22.     On or about March 22, 2017, Harbor's representative communicated to Ms. Perryman that Plaintiff, Dr. Singh was interested in selling his $500,000 note.  Perryman replied that she was meeting with investors and would convey the offer at that time.

23.     On or about April 6, 2017, Perryman responded to Plaintiffs that StimGuard "sent it (the Note) around to a few investors for consideration in a larger round."

24.     On or about April 13, 2018, Harbor sent Perryman a letter requesting Perryman provide a capitalization table representing the investors in the Defendant companies, among other information.  The letter explained that there had been a consistent lack of communication and transparency by Defendants to Plaintiffs.

25.     On or about April 13, 2018, Perryman provided to Plaintiffs a StimGuard capitalization table which showed two (2) new investors added (BioPacific Investments & Baker and Eastlack Fund) on July 31, 2017, for a total capital raise of $1,312,500.   This amount is substantially

larger than the $500,000 Note held by Dr. Singh and shows that StimGuard decided to raise new capital rather than have an investor buy the Note of Dr. Singh as communicated for several months leading up to this round of fundraising.

26.     On or about April 13, 2018, Perryman also communicated to Plaintiffs that "For StimGuard we have you listed as a redeemable investor, everyone else has converted." A "redeemable investor" is distinct from a shareholder.

27.     On or about April 25, 2017, Perryman confirmed that StimGuard was "working on a replacement for you (Dr. Singh) still at lease several weeks away!  Interest is accumulating meanwhile we left as note for now per request.  I have many interested parties!"

28.     On or about May 4, 2018, Harbor sent formal demand letters to Perryman and Dr. Gupta via regular and certified mail.  (Exhs. C and D).  The demand letters reiterated that Harbor's investment was due, with interest within twenty (20) days of receipt of the letters.

29.     On or about May 11, 2017, Perryman e-mailed, "it looks like at our sale in August we can arrange the wire."

30.     On or about June 4, 2018, Harbor sent a second demand letter to Perryman.  (Exh. E).

31.     Per the Second Demand Notice Pursuant to Section 2 of the Note, Harbor demanded payment within ten (10) business days, or it would have no alternative but to pursue any and all remedies available under the Note or otherwise available at law or in equity.  Id.

32.     On or about June 18, 2018, Ms. Perryman responded via e-mail and acknowledge receipt of the demand letters.

33.     That same day, Perryman revealed that Plaintiffs note had been converted to shares without Plaintiffs' authorization.  Perryman e-mailed, "For StimGuard LLC, that is a Bahamian company. **The shares were issued and can now be sold privately** with the Company consent of

a majority of the shareholders. We will be holding a board meeting this week and need a letter from your client as well that states the intent to sell the shares at the purchase price. We can then send a request out to the shareholders."

34.     Upon information and belief, with respect to Dr. Gupta's position as an Advisor/Board Member of the company, following the first and second Demand Notices from Harbor, which both Dr. Gupta and Perryman were receiving parties, Dr. Gupta and Perryman determined it was in their own best interest to convert the Promissory Note to equity shares in an attempt by Dr. Gupta and/or StimGuard to negatively impact Dr. Gupta's express guarantee to Plaintiffs.

35.     This is consistent with the guarantee letter where Dr. Gupta stated he would "personally guarantee your (Dr. Singh's) investment and will personally reimburse your investment plus 15% annualized return on either investment if it were to fail causing your total or partial loss of funds.  The investment will be presumed to have failed if the company ceases operation, becomes defunct <u>or if the conversation [conversion] of the note results in a total or partial loss of the investment and does not occur in the above (six months and 2 years) with an additional six-month grace period</u>."

36.     Based on the aforesaid written confirmations from Perryman in 2018, the Promissory Note outstanding Principal had not been previously converted to equity shares.

37.     As a result of Defendants converting the Note by StimGuard without Plaintiffs' consent, in an attempt to avoid the Note principal and interest as due and payable as per the Second Demand Notice, Plaintiffs have suffered significant financial damages, including Defendants' attempting to negatively impact Dr. Gupta's express guarantee to Plaintiffs.

38.     StimGuard, LLC is now in Default of the Convertible Promissory Note per Section 2(a) "The Company shall fail to pay (I) when due any principal payment on the due date hereunder"... resulting from our demand of payment as the Majority in Interest of Investors.  (Exh. A).

39.     It is also believed that Defendants will not repay Plaintiffs because Plaintiffs have a separate $500,000 investment in a separate company called StimQ Medical, LLC ("StimQ"). (Exh. F).  StimQ has a believed valuation of approximately $200 million which was provided by Dr. Gupta to Harbor representatives on or about June 5, 2018 in an apparent text message between Gupta & Perryman.  StimGuard's shares are considerably less valuable.

40.     Upon information and belief, Defendants will only reimburse the StimGuard investment if Plaintiffs agree to be reimbursed for the separate StimQ investment at or near the original investment amount – rather than the present-day higher value of the StimQ shares (Plaintiffs are entitled to the present-day higher value).

41.     As a further result of the aforesaid, Defendants have caused Plaintiffs severe investment opportunity loss during the term of these investments – both in potential income and time spent by Plaintiffs' investment advisors.

    IV.     **Causes of Action**

## COUNT I
### Breach of Contract/Quasi-Contract/Unjust Enrichment/Promissory Estoppel

42.     Plaintiffs incorporate by reference all prior paragraphs as if fully set forth at length herein.

43.     Defendants' aforementioned misconduct constitutes a breach of the contract(s), express, implied, and as a matter of law.

44.     As a direct and proximate result of the aforesaid breach of the agreement, Plaintiffs have been damaged as set forth above.

## COUNT II
### Third-Party Beneficiary

45.     Plaintiffs incorporate by reference all prior paragraphs as if fully set forth at length herein.

46.     Plaintiffs were third-party or otherwise beneficiaries under the contract(s) between the parties.

47.     The aforesaid misconduct of Defendants constitutes a breach of contract(s), express and/or implied at law.

## COUNT III
### Fraud

48.     Plaintiffs incorporate by reference all prior paragraphs as if fully set forth at length herein.

49.     Defendants intentionally misrepresented and/or omitted material facts to Plaintiffs, including the aforesaid.

50.     The aforesaid intentional misrepresentations and/or omissions were made in an attempt to procure pecuniary gain from the Plaintiffs.

51.     As the intended result of the aforesaid, Plaintiffs reasonably relied upon said misrepresentations and/or omissions to their detriment.

52.     As the direct and proximate results of the aforesaid, Plaintiffs sustained the aforesaid damages (incorporated by reference).

## COUNT IV
### Breach of Fiduciary Duty

53.     Plaintiffs incorporate by reference all prior paragraphs as if fully set forth at length herein.

54.     Plaintiffs and Defendants were in a fiduciary relationship.

55.     Defendants' aforementioned conduct constitutes a breach of that fiduciary relationship.

56. As a direct and proximate result of the aforesaid breach of fiduciary duty, Plaintiffs have been damaged (as set forth above).

## COUNT V
### Piercing the Corporate Veil

57. Plaintiffs incorporate by reference all prior paragraphs as if fully set forth at length herein.

58. Undercapitalization, failure to adhere to corporate formalities, substantial intermingling of corporate and personal affairs and use of the corporate form to perpetrate a fraud.

59. Corporate veil may be pierced whenever one in control of a corporation uses that control or corporate assets to further his personal interests.

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendants, individually, jointly and/or severally, in an amount in excess of five million ($5,000,000) dollars, including punitive damages, and further relief as this Honorable Court deems necessary and just, including attorney's fees and costs.

**WEISBERG LAW**

/s/ Matthew B. Weisberg
Matthew B. Weisberg, Esquire
David A. Berlin, Esquire
Attorneys for Plaintiffs

# EXHIBIT A

DocuSign Envelope ID: 98110695-C39B-4A2B-BF28-66A6F98F63DB

THIS NOTE AND THE SECURITIES ISSUABLE UPON THE CONVERSION HEREOF HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "**ACT**"), OR UNDER THE SECURITIES LAWS OF CERTAIN STATES.  THESE SECURITIES MAY NOT BE OFFERED, SOLD OR OTHERWISE TRANSFERRED, PLEDGED OR HYPOTHECATED EXCEPT AS PERMITTED UNDER THE ACT AND APPLICABLE STATE SECURITIES LAWS PURSUANT TO AN EFFECTIVE REGISTRATION STATEMENT OR AN EXEMPTION THEREFROM.  THE ISSUER OF THESE SECURITIES MAY REQUIRE AN OPINION OF COUNSEL REASONABLY SATISFACTORY TO THE ISSUER THAT SUCH OFFER, SALE OR TRANSFER, PLEDGE OR HYPOTHECATION OTHERWISE COMPLIES WITH THE ACT AND ANY APPLICABLE STATE SECURITIES LAWS.

## STIMGUARD LLC

### CONVERTIBLE PROMISSORY NOTE

$ 500,000                                                                      May 15th _____, 2015

     FOR VALUE RECEIVED, StimGuard LLC, a Bahamas limited liability company (the "**Company**") promises to pay to K. Rising ("**Investor**"), or its registered assigns, in lawful money of the United States of America the principal sum of $ 500,000 or such lesser amount as shall equal the outstanding principal amount hereof, together with interest from the date of this Convertible Promissory Note (this "**Note**") on the unpaid principal balance at an annual rate equal to 3%, computed on the basis of the actual number of days elapsed and a year of 365 days. All unpaid principal, together with any then unpaid and accrued interest and other amounts payable hereunder, shall be due and payable on the earlier of (i) when, after the twelve (12) month anniversary of the initial issuance of Notes, such amounts are declared due and payable by a Majority in Interest of Investors (ii) when, upon the occurrence and during the continuance of an Event of Default, such amounts are declared due and payable by a Majority in Interest of Investors or made automatically due and payable, in each case, in accordance with the terms hereof (the "**Maturity Date**").  This Note is one of the "Notes" issued pursuant to the Agreements.  Capitalized terms not otherwise defined herein shall have the meanings assigned to them in the Agreements.

     The following is a statement of the rights of Investor and the conditions to which this Note is subject, and to which Investor, by the acceptance of this Note, agrees:

    1.   *Payments.*

       (a)  *Interest.*  Accrued interest on this Note shall be payable at maturity.

       (b)  *Voluntary Prepayment.*  Upon five days prior written notice to Investor, the Company may prepay this Note in whole or in part; *provided* that any prepayment of this Note may only be made in connection with the prepayment of all Notes issued under the Agreements on a pro rata basis, based on the respective aggregate outstanding principal amounts of each such Note. subject to Investor's consent.

       (c)  *Automatic Prepayment.*  In the event of a Change of Control, the outstanding principal amount of this Note, plus all accrued and unpaid interest, in each case that has not otherwise been converted into equity securities pursuant to **Section 4**, shall be due and payable immediately prior to the closing of such Change of Control.

DocuSign Envelope ID: 98110695-C39B-4A2B-BF28-66A6F98F63DB

2.   *Events of Default*. The occurrence of any of the following shall constitute an **"Event of Default"** under this Note:

(a)  *Failure to Pay*.  The Company shall fail to pay (i) when due any principal payment on the due date hereunder or (ii) any interest payment or other payment required under the terms of this Note or any other Transaction Document on the date due and such payment shall not have been made within twenty (20) business days of the Company's receipt of written notice to the Company of such failure to pay; or

(b)  *Voluntary Bankruptcy or Insolvency Proceedings*.  The Company shall (i) apply for or consent to the appointment of a receiver, trustee, liquidator or custodian of itself or of all or a substantial part of its property, (ii) admit in writing its inability to pay its debts generally as they mature, (iii) make a general assignment for the benefit of its or any of its creditors, (iv) be dissolved or liquidated, (v) commence a voluntary case or other proceeding seeking liquidation, reorganization or other relief with respect to itself or its debts under any bankruptcy, insolvency or other similar law now or hereafter in effect or consent to any such relief or to the appointment of or taking possession of its property by any official in an involuntary case or other proceeding commenced against it, or (vi) take any action for the purpose of effecting any of the foregoing; or

(c)  *Involuntary Bankruptcy or Insolvency Proceedings*.  Proceedings for the appointment of a receiver, trustee, liquidator or custodian of the Company, or of all or a substantial part of the property thereof, or an involuntary case or other proceedings seeking liquidation, reorganization or other relief with respect to the Company or any of its Subsidiaries, if any, or the debts thereof under any bankruptcy, insolvency or other similar law now or hereafter in effect shall be commenced and an order for relief entered or such proceeding shall not be dismissed or discharged within 45 days of commencement.

3.   *Rights of Investor upon Default*. Upon the occurrence of any Event of Default (other than an Event of Default described in **Sections 2(b)** or **2(c)**) and at any time thereafter during the continuance of such Event of Default, Investor may, with the written consent of a Majority in Interest of Investors, by written notice to the Company, declare all outstanding Obligations payable by the Company hereunder to be immediately due and payable without presentment, demand, protest or any other notice of any kind, all of which are hereby expressly waived, anything contained herein or in the other Transaction Documents to the contrary notwithstanding.  Upon the occurrence of any Event of Default described in **Sections 2(b)** and **2(c)**, immediately and without notice, all outstanding Obligations payable by the Company hereunder shall automatically become immediately due and payable, without presentment, demand, protest or any other notice of any kind, all of which are hereby expressly waived, anything contained herein or in the other Transaction Documents to the contrary notwithstanding.  In addition to the foregoing remedies, upon the occurrence and during the continuance of any Event of Default, Investor may, with the written consent of a Majority in Interest of Investors, exercise any other right power or remedy granted to it by the Transaction Documents or otherwise permitted to it by law, either by suit in equity or by action at law, or both.

4.   *Conversion*.

(a)  *Automatic Conversion*. If a Qualified Financing occurs on or prior to the Maturity Date, then the outstanding principal amount of this Note and all accrued and unpaid interest on this Note shall automatically convert into fully paid and nonassessable Equity Securities issued in such Qualified Financing at the Conversion Price, and with an initial capital contribution equal to the principal amount plus accrued interest that is converted.

2

DocuSign Envelope ID: 98110695-C39B-4A2B-BF28-66A6F98F63DB

(b) *Voluntary Conversion upon Change of Control.* If a Change of Control occurs on or prior to a Qualified Financing, then the outstanding principal amount of this Note and all accrued and unpaid interest on this Note shall be automatically converted at the written election of a Majority in Interest of Investors into fully paid and nonassessable Equity Securities of the Company at the Conversion Price.

(c) *Conversion Procedure.*

(i) <u>General</u>. Written notice shall be delivered to Investor at the address last shown on the records of the Company for Investor or given by Investor to the Company for the purpose of notice, notifying Investor of the conversion to be effected, specifying the Conversion Price, the principal amount of the Note to be converted, together with all accrued and unpaid interest to be converted, the date on which such conversion is expected to occur and calling upon such Investor to surrender to the Company, in the manner and at the place designated, the Note. Upon such conversion of this Note in connection with a Qualified Financing or a Change of Control (if voluntarily converted in connection with a Change of Control), Investor hereby agrees to execute and deliver to the Company all transaction documents entered into by other purchasers participating in the Qualified Financing or Change of Control transaction, including a purchase agreement, an investor rights agreement, voting agreement, right of first refusal and co-sale agreement and other ancillary agreements executed by the purchasers participating in the Qualified Financing or Change of Control transaction, with customary representations and warranties and transfer restrictions (including, without limitation, a lock-up agreement in connection with an initial public offering). Investor also agrees to deliver the original of this Note (or a notice to the effect that the original Note has been lost, stolen or destroyed and an agreement acceptable to the Company whereby the holder agrees to indemnify the Company from any loss incurred by it in connection with this Note) at the closing of the Qualified Financing or Change of Control (if voluntarily converted in connection with a Change of Control) for cancellation; *provided, however,* that upon the closing of the Qualified Financing or Change of Control (if voluntarily converted in connection with a Change of Control), this Note shall be deemed converted and of no further force and effect, whether or not it is delivered for cancellation as set forth in this sentence. The Company shall, as soon as practicable thereafter, issue and deliver to such Investor a certificate or certificates for the number of shares to which Investor shall be entitled upon such conversion. Any conversion of this Note pursuant to **Section 4(a)** or **4(b)** shall be deemed to have been made upon the closing of the Qualified Financing or Change of Control (if voluntarily converted in connection with a Change of Control) and on and after such date the Persons entitled to receive the equity interests issuable upon such conversion shall be treated for all purposes as the record holder of such equity interests.

(ii) <u>Effect of Conversion</u>. Upon conversion of this Note, Company shall be forever released from all its obligations and liabilities under this Note and this Note shall be deemed of no further force or effect, whether or not the original of this Note has been delivered to the Company for cancellation.

(d) This Note shall convert pursuant to this **Section 4** into membership interests, otherwise referred to as "units", or shares of the Company's equity securities which may become issuable upon conversion of this Note (the **"Equity Securities"**).

5. *Definitions.* As used in this Note, the following capitalized terms have the following meanings:

"**Agreements**" has the meaning given in the Note Subscription Agreement (as amended, modified or supplemented) dated of even date herewith by and between the Company and Investor, pursuant to which this Note was issued.

3

DocuSign Envelope ID: 98110695-C39B-4A2B-BF28-66A6F98F63DB

"**Change of Control**" shall mean (a) the acquisition of the equity securities of the Company by another entity by means of any transaction or series of related transactions (including, without limitation, any reorganization, merger or consolidation), unless the Company's unit holders as constituted immediately prior to such transaction or series of related transactions will, immediately after such transaction or series of related transactions hold at least a majority of the voting power of the surviving or acquiring entity, (b) a sale of all or substantially all of the assets of the Company or (c) the closing of the Company's first firm commitment underwritten public offering of the Company's units registered under the Securities Act of 1933 as amended. Notwithstanding the foregoing, a transaction will not constitute a Change of Control if: (i) its purpose is to change the state of the Company's formation; or (ii) its purpose is to create a holding company that will be owned in substantially the same proportions by the persons who held the Company's securities immediately before such transaction.

"**Conversion Price**" shall mean (1) with respect to conversion in connection with a Qualified Financing, a price per unit equal to seventy-five percent (75%) of the price per unit paid by the cash purchasers of the Equity Securities sold in the Qualified Financing and (2) with respect to conversion into shares of the Company's Equity Securities in connection with a Change of Control, a price per unit based on a $2.00 valuation prior to the Change of Control.

"**Event of Default**" has the meaning given in **Section 2** hereof.

"**Investor**" shall mean the Person specified in the introductory paragraph of this Note or any Person who shall at the time be the registered holder of this Note.

"**Lien**" shall mean, with respect to any property, any security interest, mortgage, pledge, lien, claim, charge or other encumbrance.

"**Majority in Interest of Investors**" shall mean Investors holding more than 50% of the aggregate outstanding principal amount of the Notes.

"**Obligations**" shall mean and include all loans, advances, debts, liabilities and obligations, howsoever arising, owed by the Company to Investor of every kind and description, now existing or hereafter arising under or pursuant to the terms of this Note and the other Transaction Documents, including, all interest, fees, charges, expenses, attorneys' fees and costs and accountants' fees and costs chargeable to and payable by the Company hereunder and thereunder, in each case, whether direct or indirect, absolute or contingent, due or to become due, and whether or not arising after the commencement of a proceeding under Title 11 of the United States Code (11 U. S. C. Section 101 *et seq.*), as amended from time to time (including post-petition interest) and whether or not allowed or allowable as a claim in any such proceeding.

"**Person**" shall mean and include an individual, a partnership, a corporation (including a business trust), a joint stock company, a limited liability company, an unincorporated association, a joint venture or other entity or a governmental authority.

"**Qualified Financing**" is a transaction or series of transactions pursuant to which the Company issues and sells shares of its Equity Securities for aggregate gross proceeds of at least $1,000,000 (excluding any and all Notes which are converted into such Equity Securities, or otherwise cancelled in consideration for the issuance of such Equity Securities) with the principal purpose of raising capital.

"**Securities Act**" shall mean the Securities Act of 1933, as amended.

4

DocuSign Envelope ID: 98110695-C39B-4A2B-BF28-66A6F98F63DB

"**Transaction Documents**" shall mean this Note, each of the other Notes, and the Agreements.

6.  *Miscellaneous*.

(a) *Successors and Assigns; Transfer of this Note or Securities Issuable on Conversion Hereof*.

(i)     Subject to the restrictions on transfer described in this **Section 6(a)**, the rights and obligations of the Company and Investor shall be binding upon and benefit the successors, assigns, heirs, administrators and transferees of the parties.

(ii)     With respect to any offer, sale or other disposition of this Note or securities into which such Note may be converted, Investor will give written notice to the Company prior thereto, describing briefly the manner thereof, together with a written opinion of Investor's counsel, or other evidence if reasonably satisfactory to the Company, to the effect that such offer, sale or other distribution may be effected without registration or qualification (under any federal or state law then in effect). Upon receiving such written notice and reasonably satisfactory opinion, if so requested, or other evidence, the Company, as promptly as practicable, shall notify Investor that Investor may sell or otherwise dispose of this Note or such securities, all in accordance with the terms of the notice delivered to the Company. If a determination has been made pursuant to this **Section 6(a)** that the opinion of counsel for Investor, or other evidence, is not reasonably satisfactory to the Company, the Company shall so notify Investor promptly after such determination has been made. Each Note thus transferred and each certificate representing the securities thus transferred shall bear a legend as to the applicable restrictions on transferability in order to ensure compliance with the Securities Act, unless in the opinion of counsel for the Company such legend is not required in order to ensure compliance with the Securities Act. The Company may issue stop transfer instructions to its transfer agent in connection with such restrictions. Subject to the foregoing, transfers of this Note shall be registered upon registration books maintained for such purpose by or on behalf of the Company as provided in the Agreement. Prior to presentation of this Note for registration of transfer, the Company shall treat the registered holder hereof as the owner and holder of this Note for the purpose of receiving all payments of principal and interest hereon and for all other purposes whatsoever, whether or not this Note shall be overdue and the Company shall not be affected by notice to the contrary.

(b) *Waiver and Amendment*.  Any provision of this Note may be amended, waived or modified upon the written consent of the Company and a Majority in Interest of Investors. Any amendment or waiver effected in accordance with this paragraph shall be binding upon all of the Investors with respect to their Notes.

(c) *Notices*.  All notices, requests, demands, consents, instructions or other communications required or permitted hereunder shall be in writing and faxed, mailed or delivered to each party at the respective addresses of the parties as set forth in the Agreement, or at such other address or facsimile number as the Company shall have furnished to Investor in writing. All such notices and communications will be deemed effectively given the earlier of (i) when received, (ii) when delivered personally, (iii) one business day after being delivered by facsimile (with receipt of appropriate confirmation), (iv) one business day after being deposited with an overnight courier service of recognized standing or (v) four days after being deposited in the U.S. mail, first class with postage prepaid.

5

DocuSign Envelope ID: 98110695-C39B-4A2B-BF28-66A6F98F63DB

(d) *Pari Passu Notes*.    Investor acknowledges and agrees that the payment of all or any portion of the outstanding principal amount of this Note and all interest hereon shall be pari passu in right of payment and in all other respects to the other Notes.  In the event Investor receives payments in excess of its pro rata share of the Company's payments to the Investors of all of the Notes, then Investor shall hold in trust all such excess payments for the benefit of the holders of the other Notes and shall pay such amounts held in trust to such other holders upon demand by such holders.

(e) *Payment*.    Unless converted into the Company's equity securities pursuant to the terms hereof, payment shall be made in lawful tender of the United States.

(f) *Governing Law*.    This Note and all actions arising out of or in connection with this Note shall be governed by and construed in accordance with the laws of the State of California, without regard to the conflicts of law provisions of the State of California, or of any other state.

(g) *Waiver of Jury Trial; Judicial Reference*.    By acceptance of this Note, Investor hereby agrees and the Company hereby agrees to waive their respective rights to a jury trial of any claim or cause of action based upon or arising out of this Note or any of the Transaction Documents.  If the jury waiver set forth in this paragraph is not enforceable, then any claim or cause of action arising out of or relating to this Note, the Transaction Documents or any of the transactions contemplated therein shall be settled by judicial reference pursuant to Code of Civil Procedure Section 638 et seq. before a referee sitting without a jury, such referee to be mutually acceptable to the parties or, if no agreement is reached, by a referee appointed by the Presiding Judge of the California Superior Court for Santa Clara County.  This paragraph shall not restrict a party from exercising remedies under the Uniform Commercial Code or from exercising pre-judgment remedies under applicable law.

*[signature page follows]*

6

DocuSign Envelope ID: 98110695-C39B-4A2B-BF28-66A6F98F63DB

The Company has caused this Note to be issued as of the date first written above.

COMPANY:

STIMGUARD LLC,
a Bahamas limited liability company

DocuSigned by:

*Laura Tyler Perryman*

8C090899DB4C4B3...

By:  Micron Devices LLC,
     a Delaware limited liability company
Its:  Managing Member

     Name: Laura Tyler Perryman

     Title: Manager

June 12, 2015

Frank Bongrazio, CFO
Holtec International
One Holtec Drive
Marlton, New Jersey 08053

Re:    Back stop guarantee for investments made at Dr. Sanjay Gupta's recommendation

Dear Mr. Bongrazio:

I am pleased to confirm that I am involved in two start-up companies, STIM GUARD, LLC as Board of Director, and  STIMQ, LLC as Advisory Board (as STIM Q does not have a separate Board of Director Team)  and have professional knowledge of their technology and their business prospects, within my own limitations.

I firmly believe that your convertible note investment in these companies at this time, made at my strong recommendation, will lead to good return for the capital account of the Singh family, which you manage, within a short time. The conversion note maturity date expected for STIMQ, LLC is six months and for STIMGUARD, LLC, is two years. Upon conversion of your convertible note or sale of STIMQ, LLC and STIMGUARD, LLC, the profits earned on the investments shall be split so that each party (Singh family and Dr. Gupta) shall receive a 50% share.

As you understand, there are risks of partial or complete loss in every investment. To assure your concerns arising from your lack of familiarly with STIMQ, LLC and STIMGUARD, LLC   and in consideration for your investment, I am willing to provide the following personal guarantee:

I, Sanjay Gupta, hereby unconditionally, absolutely and irrevocably personally guarantee your investment and will personally reimburse your investment plus 15% annualized return on either investment if it were to fail causing you total or partial loss of funds.

The investment will be presumed to have failed if the company ceases operation, becomes defunct or if conversation of the note results in total or partial loss of the investment and does not occur in the time period mentioned above (six months and 2 years) with an additional six months grace period.

I represent that I possess adequate personal resources to honor the above-referenced refund commitment and that this personal guarantee is a guarantee of payment and not of collection and does not impair your rights against the companies and their officers available to you under law.

Sincerely,

Dr. Sanjay Gupta

Sworn to and subscribed before me this
12th day of June, 2015

Notary Public

**ERIKA GRANDRIMO**

**NOTARY PUBLIC**
**My Commission Expires 1/17/2017**

ACCEPTED

CFO

# EXHIBIT C

# Weisberg Law

*Attorneys & Counselors at Law*
LICENSED IN PA & NJ

7 SOUTH MORTON AVENUE
MORTON, PENNSYLVANIA 19070
PH: 610.690.0801
FAX: 610.690.0880

Additional Offices
Philadelphia, Pa
Bala Cynwyd, Pa

Matthew B. Weisberg\*^
L. Anthony DiJiacomo~
David A. Berlin^
Robert P. Cocco~+
Gary Schafkopf^+
Brian Mildenberg~+
Marc Weisberg~+
Yanna Panagopoulos~+

\*NJ & PA Office Manager
^Licensed in PA & NJ
~Licensed in PA
+Of Counsel

Web-Site: **www.weisberglawoffices.com**
E-Mail: DBERLIN@WEISBERGLAWOFFICES.COM

*Friday, May 4, 2018*

**Sent via Regular and Certified Mail Delivery**
*7017 3040 0000 5695 8551*
Laura Perryman
On behalf of StimGuard LLC
901 E Las Olas Blvd., Suite 201
Fort Lauderdale, FL 33301

## RE:   DEMAND FOR PAYMENT

Dear Ms. Perryman:

Please be advised that this firm represents Dr. Krishna P. Singh and Harbor Associates (collectively, "Harbor") in connection with the Convertible Promissory Note dated May 15, 2015 by and between Stimguard, LLC (the "Company") and Harbor (the "Note").

Pursuant to the Note, all unpaid principal, together with any then unpaid and accrued interest and other amounts payable hereunder, shall be due and payable when, after the twelve (12) month anniversary of the initial issuance of the Note, such amounts are declared due and payable by a Majority of Interest of Investors (as defined in the Note). As the Company is aware, since all other investors have converted their notes to equity, Harbor holds more than fifty percent (50%) of the aggregate outstanding principal amount of the notes and therefore has the sole right to declare the Note due and payable.

In light of the foregoing, please accept this letter as Harbor's declaration that the Note be immediately due and payable. Pursuant to Section 2 of the Note, if the Company fails to make full payment of principal and interest shall be made within twenty (20) business days of your receipt of this letter, the Company shall be deemed in default of the Note. If Harbor does not receive payment within twenty (20) business days, Harbor will have no alternative but to pursue any and all remedies available under the Note or otherwise available at law or in equity.

Please be further advised that nothing set forth herein is intended to constitute, and it should not be deemed to construe, a waiver of any and all legal and equitable rights and defenses possessed by Harbor against the Company, Dr. Sanjay Gupta or Micron Devices, LLC in connection with this matter.

Please do not hesitate to contact me if you have any questions.

Sincerely,

DAVID A. BERLIN

DAB/els
cc:   Dr. Sanjay Gupta (*via Certified mail 7017 3040 0000 5695 8568*)
      Andrew R. Ryan, Esq.
      Martin Babos

# EXHIBIT D

# Weisberg Law

### *Attorneys & Counselors at Law*
LICENSED IN PA & NJ

**7 SOUTH MORTON AVENUE**
**MORTON, PENNSYLVANIA 19070**
**PH: 610.690.0801**
**FAX: 610.690.0880**

Additional Offices
Philadelphia, Pa
Bala Cynwyd, Pa

Matthew B. Weisberg*^
L. Anthony DiJiacomo~
David A. Berlin^
Robert P. Cocco~+
Gary Schafkopf^+
Brian Mildenberg~+
Marc Weisberg~+
Yanna Panagopoulos~+

*NJ & PA Office Manager
^Licensed in PA & NJ
~Licensed in PA
+Of Counsel

Web-Site: **www.weisberglawoffices.com**
E-Mail: DBERLIN@WEISBERGLAWOFFICES.COM

*Friday, May 4, 2018*

**Sent via Regular and Certified Mail Delivery**
Dr. Sanjay Gupta
2 Bala Plaza
Suite Pl - 50
Bala Cynwyd, PA 19004
sanjay@healthtimetv.com

### RE:   DEMAND FOR PAYMENT

Dear Dr. Gupta:

Please be advised that this firm represents Dr. Krishna P. Singh and Harbor Associates (collectively, "Harbor"). Please allow this letter to serve as follow-up to Harbor's letter dated July 18, 2017 and another formal demand for payment of the outstanding monies due and owing associated with the Convertible Promissory Note dated May 15, 2015 issued by you and STIMGUARD, LLC (the "Company") to Harbor (the "Note").

As you are aware, pursuant to the personal guarantee agreement dated June 15, 2015 (the "Agreement"), Harbor agreed to provide financing of Five Hundred Thousand Dollars ($500,000) to the Company in the form of a convertible note with a maturity date of June 15, 2017 (the "Maturity Date"). Further, as you are aware, you provided a personal guarantee of the Note and agreed that, in the event a sale or other such transaction failed to occur prior to the Maturity Date, you would personally reimburse Harbor the note amount of $500,000 plus an annualized return of fifteen percent (15%).

Since conversion or repayment of the Note did not occur prior to the Maturity Date, you are required to immediately reimburse Harbor the amount of Six Hundred Fifty Thousand Dollars ($650,000) which represents the principal amount of the Note and a fifteen percent (15%) annual return for the term. In light of the foregoing, please remit payment of **Six Hundred Fifty Thousand**

**Dollars ($650,000)** within **twenty (20) business days** of from the date of this letter. If Harbor does not receive payment, Harbor will have no alternative but to pursue any and all remedies available under the Note or otherwise available at law or in equity. Please be further advised that nothing set forth herein is intended to constitute, and it should not be deemed to construe, a waiver of any and all legal and equitable rights and defenses possessed by Harbor against you or the Company in connection with this matter.

Please do not hesitate to contact me if you have any questions.

Sincerely,

DAVID A. BERLIN

DAB/els

Cc:     Andrew R. Ryan, Esq.
        Martin Babos

# EXHIBIT E

# Weisberg Law

### *Attorneys & Counselors at Law*
LICENSED IN PA & NJ

**7 SOUTH MORTON AVENUE**
**MORTON, PENNSYLVANIA 19070**
**PH: 610.690.0801**
**FAX: 610.690.0880**

Additional Offices
Philadelphia, Pa
Bala Cynwyd, Pa

Web-Site: **www.weisberglawoffices.com**
E-Mail: DBERLIN@WEISBERGLAWOFFICES.COM

Matthew B. Weisberg\*^
L. Anthony DiJiacomo~
David A. Berlin^
Robert P. Cocco~+
Gary Schafkopf^+
Brian Mildenberg~+
Marc Weisberg~+
Yanna Panagopoulos~+

\*NJ & PA Office Manager
^Licensed in PA & NJ
~Licensed in PA
+Of Counsel

*Monday, June 4, 2018*

**Sent via U.S. Regular Mail, Certified Mail, and E-Mail:** *Laura@stimwave.com*

Laura Perryman
On behalf of StimGuard LLC
P.O. Box SS-19084
Nassau, New Providence, Bahamas
*Return Receipt: 7017 3040 0000 5695 8407*

Laura Perryman
On behalf of StimGuard LLC
1521 Alton Road
Miami Beach, FL 33139
*Return Receipt: 7017 3040 0000 5695 8421*

Laura Perryman
On behalf of StimGuard LLC
420 Lincoln Road, Suite 365
Miami Beach, FL 33139
*Return Receipt: 7017 3040 0000 5695 8414*

Laura Perryman
On behalf of StimGuard LLC
1310 Park Central Blvd. S.,
Pompano Beach, FL 33064
*Return Receipt: 7017 3040 0000 5695 8438*

**RE:   SECOND DEMAND FOR PAYMENT**

Dear Ms. Perryman:

Please be advised that this firm represents Dr. Krishna P. Singh and Harbor Associates (collectively, "Harbor") in connection with the Convertible Promissory Note dated May 15, 2015 by and between Stimguard, LLC (the "Company") and Harbor (the "Note").

Pursuant to the Note, all unpaid principal, together with any then unpaid and accrued interest and other amounts payable hereunder, shall be due and payable when, after the twelve (12) month anniversary of the initial issuance of the Note, such amounts are declared due and payable by a Majority of Interest of Investors (as defined in the Note). As the Company is aware, since all other investors have converted their notes to equity, Harbor holds more than fifty

percent (50%) of the aggregate outstanding principal amount of the notes and therefore has the sole right to declare the Note due and payable.

In light of the foregoing, please accept this letter as Harbor's declaration that the Note be immediately due and payable. Pursuant to Section 2 of the Note, if the Company fails to make full payment of principal and interest after receipt of our letter, the Company shall be deemed in default of the Note. If Harbor does not receive payment within ten (10) business days, Harbor will have no alternative but to pursue any and all remedies available under the Note or otherwise available at law or in equity.

Please be further advised that nothing set forth herein is intended to constitute, and it should not be deemed to construe, a waiver of any and all legal and equitable rights and defenses possessed by Harbor against the Company, Dr. Sanjay Gupta or Micron Devices, LLC in connection with this matter.

Please do not hesitate to contact me if you have any questions.

Sincerely,

/s/ David A. Berlin
DAVID A. BERLIN, ESQ.

DAB/hcm
Cc:  Andrew R. Ryan, Esq. *(via regular mail & e-mail)*
     Holtec International
     1 Holtec Boulevard
     Camden NJ, 08104
     E-Mail: M.Babos@holtec.com

     Mr. Martin Babos *(via regular mail & e-mail)*
     Holtec International
     1 Holtec Boulevard
     Camden NJ, 08104
     E-Mail: A.Ryan@holtec.com

     Dr. Sanjay Gupta *(via regular mail, certified mail, and e-mail)*
     2 Bala Plaza, Suite Pl #50
     Bala Cynwyd, PA 19004
     *Return Receipt: 7017 3040 0000 5695 8445*
     E-Mail: sanjay@healthtimetv.com

# EXHIBIT F

## StimQ Medical LLC

INCORPORATED IN THE COMMONWEALTH OF THE BAHAMAS
UNDER THE INTERNATIONAL BUSINESS COMPANIES ACT 2000 (No.45 of 2000)
*Capital: US$110,000 divided into 11,000,000 shares of US$.01 par value with one vote for each share,*
10,000,000 of which shall be Common Shares and 1,000,000 of which shall be Preferred Shares.

No......**67**.......

**This is to Certify that**.............................**Krishna Singh**.................................................

Of...**U.S.A**...is the Registered holder of...**Two Hundred Twenty-Five Thousand (225,000)**....................

Common Shares in the above-named Company, subject to the Memorandum and Articles of Association thereof,

and that the said Common Shares have been paid up in full.

**GIVEN** under the Common Seal of the said Company

this     **18**th   day of        **August**       A.D.,  **2016**.

The Common Seal of the said Company was hereunto

affixed in the presence of

_____
**Director**

NOTE: No transfer of any portion of the shares comprised in this Certificate can be registered unless accompanied by this Certificate.